IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CHRISTIE J. LAIRD )
) No. 17-115
)
    v.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security[1]

**OPINION AND ORDER**

**SYNOPSIS**

Plaintiff filed an application for social security disability benefits and supplemental security income. Plaintiff alleged disability due to mental and physical impairments, including hearing loss. Plaintiff's application was denied initially, and then denied following hearing before an Administrative Law Judge ("ALJ"). The Appeals Council remanded Plaintiff's case to the ALJ for further consideration. A second hearing was held, and the ALJ again denied Plaintiff's claim; the Appeals Council denied her request for review. The parties' Cross-Motions for Summary Judgment are before the Court. For the following reasons, Plaintiff's Motion will be granted and Defendant's denied, and this matter remanded for further proceedings.

**OPINION**

**I.    STANDARD OF REVIEW**

Judicial review of the Commissioner's final decisions on disability claims is provided by statute. 42 U.S.C. §§ 405(g) 6 and 1383(c)(3) 7. Section 405(g) permits a district court to review the transcripts and records upon which a determination of the Commissioner is based, and the

---

[1] The caption as filed named Carolyn W. Colvin, then-Acting Commissioner.

1

court will review the record as a whole. See 5 U.S.C. §706. When reviewing a decision, the district court's role is limited to determining whether the record contains substantial evidence to support an ALJ's findings of fact. Burns v. Barnhart, 312 F.3d 113, 118 (3d Cir. 2002). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate" to support a conclusion. Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995) (quoting Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)). If the ALJ's findings of fact are supported by substantial evidence, they are conclusive. 42 U.S.C. § 405(g); Richardson, 402 U.S. at 390.

A district court cannot conduct a de novo review of the Commissioner's decision, or re-weigh the evidence of record; the court can only judge the propriety of the decision with reference to the grounds invoked by the Commissioner when the decision was rendered. Palmer v. Apfel, 995 F.Supp. 549, 552 (E.D. Pa. 1998); S.E.C. v. Chenery Corp., 332 U.S. 194, 196 - 97, 67 S. Ct. 1575, 91 L. Ed. 1995 (1947). Otherwise stated, "I may not weigh the evidence or substitute my own conclusion for that of the ALJ. I must defer to the ALJ's evaluation of evidence, assessment of the credibility of witnesses, and reconciliation of conflicting expert opinions. If the ALJ's findings of fact are supported by substantial evidence, I am bound by those findings, even if I would have decided the factual inquiry differently." Brunson v. Astrue, 2011 U.S. Dist. LEXIS 55457 (E.D. Pa. Apr. 14, 2011) (citations omitted). Nonetheless, I am not required to read the ALJ's opinion "in a vacuum." Knox v. Astrue, 2010 U.S. Dist. LEXIS 28978, at *22 (W.D. Pa. May 26, 2010).

## II. THE PARTIES' MOTIONS

### A. Opinion of Dr. Haddad

Plaintiff contends that despite instructions from the Appeals Council to address the limitations in the opinion of Dr. Haddad,[2] an examining source, the ALJ failed to properly do so. In particular, Plaintiff points out that the ALJ failed to include in the residual functional capacity ("RFC") Dr. Haddad's opinion that Plaintiff was markedly limited in responding appropriately to work pressures.

In addition to other limitations, Dr. Haddad opined that Plaintiff was markedly impaired in responding appropriately to pressures in a usual work setting, and moderately impaired in responding appropriately to changes in a routine work setting. He also opined to marked impairment in carrying out detailed instructions and interacting appropriately with the public, and moderate impairment with regard to detailed instructions and responding to changes in the work setting. In the decision now under appeal, the ALJ gave Dr. Haddad's opinion "significant weight," as "consistent with … her reported difficulties with stress as well as the mental status examination…." The RFC included, <u>inter alia</u>, a limitation to routine and repetitive tasks performed in a work environment free of fast-paced production requirements, and work isolated from the public with only occasional interactions with supervisors and co-workers.

At the hearing, the ALJ first posed two hypotheticals to the vocational expert ("VE"), describing an individual with the limitations that were included in Plaintiff's RFC, including the

---

[2] After Plaintiff's first hearing before this ALJ, the Appeals Council remanded with, <u>inter alia</u>, the following instructions:
> [T]he hearing decision indicates that the claimant has [sic] maintaining social functioning; but social limitations are not included in the RFC. … Dr. Haddad also opined that the claimant would have marked difficulty with public interaction. Without explanation, the ALJ did not include this limitation in the RFC. Further consideration is necessary.

3

limitations regarding routine and repetitive tasks and fast-paced production requirements. The VE stated that such an individual could perform jobs in the national economy. The ALJ then gave the same hypothetical, with the additional limitation that the individual has "a marked impairment in responding appropriately to work pressures and usual work situations."[3] The ALJ asked whether such a person could perform jobs in the national economy. The VE responded, "No."

It is possible that a restriction precluding fast-paced production work, or limitations to routine and repetitive tasks, address a marked limitation on the ability to respond appropriately to work pressures in a usual work setting. See, e.g., Hart v. Colvin, No. 13-5, 2013 U.S. Dist. LEXIS 127209, at *28 (W.D. Pa. Sep. 6, 2013). It appears, however, that neither the ALJ nor the VE considered the RFC to address such a marked limitation; the ALJ added the limitation to her hypothetical, and the addition materially altered the VE's response. Indeed, Defendant does not suggest that the RFC adequately accounts for the limitation in question. As an evidentiary matter, then, the effect of this particular limitation was dispositive.

An ALJ's RFC assessment must be accompanied by a satisfactory explanation of the basis on which it rests. Absent such explanation, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." Frazier v. Colvin, No. 13-3742, 2015 U.S. Dist. LEXIS 96033, at *16-17 (E.D. Pa. June 30, 2015). Defendant contends that the ALJ implicitly rejected a limitation regarding Plaintiff's response to work pressures, and points to evidence sprinkled throughout the decision that, it argues, contradicts the limitation – for example, mental status examinations showing positive signs such as an ability to relate and neat dress and grooming, poor compliance with and sporadic treatment for depression, and

---

[3] The ALJ also added "a marked impairment interacting with the public," but the initial hypotheticals, which included the RFC limitations, already included a restriction that the person be "isolated from the public."

4

cooperative behavior during a psychological evaluation. It is not immediately apparent either that the evidence Defendant recites is inconsistent with a limitation on responding to work pressures, or that the ALJ relied thereon in rejecting the limitations.[4] Indeed, it is unclear whether the limitation was omitted intentionally, and on what basis. Under the circumstances, the lack of clarity regarding the ALJ's approach to Dr. Haddad's opinion inhibits proper review, and remand is warranted.

### A. Interpreter

Plaintiff contends that the ALJ erred when, at the second hearing, she declined to allow Plaintiff's hearing interpreter to enter the room. Plaintiff's counsel avers that he repeatedly requested that Plaintiff be permitted the use of an interpreter, and the opportunity to place the issue of the interpreter's presence on the record, and the Court refused. This, Plaintiff argues, infected the proceeding both procedurally and substantively, and denied Plaintiff a full and fair hearing. The Government responds that the ALJ thoroughly explained why Plaintiff did not have work-preclusive limitations, and observed, inter alia, that medical records show that she is proficient in lip-reading and communicates without difficulty.

It is well-settled that an ALJ has the basic obligation to ensure the development of a full and fair record. The Defendant's Program Operations Manual ("POMS") states a policy to provide an interpreter, or permit the use of one's own qualified interpreter, "to any individual requesting language assistance." POMS DI 23040.001 DDS. Under this policy, "interpreter" includes an individual who speaks sign language. Id. While POMS is not binding law, a violation of the interpreter policy may be seen as a failure to provide a full and fair hearing. Alvarez v. Comm'r of the SSA, No. 10-890, 2011 U.S. Dist. LEXIS 70066, at *11 (D.N.J. June

---

[4] I note that the ALJ also discussed the agency psychological consultant, Kerry Brace, Psy. D., and her opinion that Plaintiff had moderate limitations in her ability to respond appropriately to changes in the work setting.

5

28, 2011). Ultimately, the question is whether the lack of an interpreter caused Plaintiff a disadvantage at the hearing. Id.

> In order to find that an interpreter was needed based on the transcript of the hearing, the misunderstandings must rise above the normal misstatements or clarifications involved when even fluent English speakers converse. Having to ask a question twice to get a clear answer, or to ask a question in a different way does not itself suffice to show that the lack of an interpreter has disadvantaged a claimant, since introducing an interpreter does not render all communication flawless and brings its own communication challenges. Some greater problem of understanding is needed to show that an interpreter was necessary.

Id.

The record contains a letter dated September 10, 2014, the day before Plaintiff's hearing. The letter, from Plaintiff's counsel to the ALJ, states that a hearing interpreter would be present at the hearing, "at the suggestion of Ms. Laird's caseworker…who indicated that Ms. Laird has severe difficulty hearing and comprehending." Counsel represents, and this Court is bound to accept, that the interpreter was present but the ALJ refused to permit the interpreter to enter the room. Further, counsel represents that he repeatedly requested to go on the record to memorialize the interpreter's presence and Plaintiff's request for the interpreter, but the ALJ refused to commence recording. When asked by counsel whether her health provider indicated that she "should have an interpreter at today's hearing," Plaintiff responded in the affirmative. Plaintiff's counsel stated, "I did just want to note for the record the question I asked regarding the interpreter just involved the recommendation from her counselor from Mercy Behavioral Health to have one. We do have one here today." The ALJ responded, "And it's already noted in the file…and I've noted it today." At the outset of the hearing, Plaintiff indicated that the ALJ was speaking very fast, and she had trouble hearing women. The ALJ stated that she would speak more slowly. Plaintiff's testimony suggested that she was able to hear the ALJ from her

6

seat about ten feet away, in the quiet courtroom lacking background noise, but it took 100% concentration.

The ALJ's unexplained refusal to allow an interpreter, whose presence had been secured by Plaintiff, requested by Plaintiff, and recommended by Plaintiff's care providers, is concerning. Unlike many cases remanded for lack of an interpreter, however, Plaintiff's fully appropriate responses to questioning suggest that Plaintiff did not mishear or misunderstand the questions posed her. Further, Plaintiff's testimony suggested that she could adequately hear the ALJ's questioning. Moreover, unlike cases involving deprivation of a foreign language interpreter, there is no suggestion that Plaintiff had difficulty communicating her own testimony. In other words, the presence of an interpreter, in this case, potentially bears only on input to Plaintiff rather than output from Plaintiff. There is no suggestion that the Plaintiff was unable to effectively, completely, and accurately communicate to the ALJ regarding her alleged disability, present her case, and have her testimony understood. At present, Plaintiff does not specify any particular instance tending to demonstrate that the lack of an interpreter actually prejudiced Plaintiff. These factors, along with the fact that Plaintiff's counsel was present throughout the hearing, weigh against remand on this basis alone. On remand, however, should the ALJ deem another hearing necessary, the presence of an interpreter should be reconsidered.

## CONCLUSION

In conclusion, this matter will be remanded for further consideration of the opinion of Dr. Haddid, consistent with this Opinion. An appropriate Order follows.

Dated: 2/8/18    BY THE COURT:

*/s/ Donetta W. Ambrose*

Donetta W. Ambrose

Senior Judge, U.S. District Court

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CHRISTY J. LAIRD )
) No. 17-115
)
    v.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security

## ORDER

AND NOW, this 8th day of February, 2018, it is hereby ORDERED, ADJUDGED, and DECREED that Plaintiff's Motion is GRANTED and Defendant's DENIED. This matter is remanded for further proceedings consistent with the foregoing Opinion.

                              BY THE COURT:

                              */s/ Donetta W. Ambrose*

                              _____

                              Donetta W. Ambrose

                              Senior Judge, U.S. District Court